IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **AMERICAN FAMILY HOME** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL ACTION 08-0547-WS-C** |
| ) | |
| **TYRONE HILLERY,** *et al.***,** ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on defendants' pleading styled "Response to this Honorable Court's Show Cause Order Why Clerk's Entry of Default Should Be Set Aside" (doc. 16). Also pending is plaintiff's Motion for Default Judgment (doc. 6-2).

On November 5, 2008, a Clerk's Entry of Default (doc. 7) was entered against defendants, Tyrone Hillery and Shelia Jones, pursuant to Rule 55(a), Fed.R.Civ.P., based on their failure to appear or otherwise defend within the time prescribed by the Federal Rules of Civil Procedure. After defendants' initial attempt to set aside the default was stricken by this Court for the reasons set forth in the Order (doc. 15) dated December 30, 2008, defendants filed a new submission (doc. 16) on January 7, 2009, seeking to have the default set aside pursuant to Rule 55(c). Plaintiff has not responded to that filing.

*A.     Legal Standard.*

Evaluation of defendants' request to set aside the default begins with the well-worn proposition that "defaults are seen with disfavor because of the strong policy of determining cases on their merits." *Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993); *see also In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (similar). In that regard, the Eleventh Circuit has recognized that "a technical error or a slight mistake by a party's attorney should not deprive the party of an opportunity to present the merits of his claim." *Ehlers*, 8 F.3d at 783 (citation omitted). Indeed, "[d]efaults are reserved for rare

occasions and when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Canfield v. VSH Restaurant Corp.*, 162 F.R.D. 431, 434 (N.D.N.Y. 1995).[1]

Bearing the disfavored status of defaults in mind, the Court turns to Rule 55(c), Fed.R.Civ.P., which provides that "[f]or good cause shown the court may set aside an entry of default." *Id.*[2] The rule means what it says. Irrespective of the recognized judicial preference of resolving cases on their merits, a court cannot set aside a default merely because a defendant asks; to the contrary, "a district court may set aside an entry of default only if the defaulting party can provide a good reason for the district court to do so." *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999). In this case, the burden of making such a showing rests squarely on Hillery and Jones. *See Insituform Technologies, Inc. v. AMerik Supplies, Inc.*, --- F. Supp.2d ----, 2008 WL 5133599, *2 (N.D. Ga. Nov. 17, 2008) ("The defendant bears the burden of establishing good cause to set aside an entry of default.").

In determining whether the requisite good cause or good reason exists, courts balance an array of factors, including principally whether the default was willful, whether setting aside the default would prejudice the plaintiff, and whether the defendant had a meritorious defense. *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).[3] That said, the Rule 55(c) "good cause" analysis for setting aside a

---

[1] *See also Insituform Technologies, Inc. v. AMerik Supplies, Inc.*, --- F. Supp.2d ---, 2008 WL 5133599, *2 (N.D. Ga. Nov. 17, 2008) ("any doubts regarding whether to set aside an entry of default should be resolved in favor of the party seeking relief"); *McGarey v. York County*, 233 F.R.D. 220, 222 (D. Me. 2006) (rule governing defaults "is tempered by the philosophy that actions should ordinarily be resolved on their merits") (citation omitted); *McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002) ("Because defaults are generally disfavored, courts resolve such motions so as to encourage a decision on the merits.").

[2] No default judgment has entered in this case. This is potentially significant, inasmuch as "[t]he excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default." *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

[3] *See also Hinson v. Webster Industries*, 240 F.R.D. 687, 690 (M.D. Ala. 2007) (in applying "good cause" standard of Rule 55(c), courts consider, among other things, whether default was culpable or willful, which entails evaluating the plausibility of the defaulting party's

default is a mutable, flexible inquiry, not susceptible to a precise formula, and must be based on the particular circumstances of the particular case.  *See, e.g., Compania Interamericana*, 88 F.3d at 951; *Lee v. Golden Fortune Int'l, Inc.*, 2009 WL 36452, *1 (M.D. Fla. Jan. 6, 2009) ("Good cause is a liberal, elastic standard that does not have a precise formula.") (citation omitted); *Insituform*, 2008 WL 5133599, at *1 (Rule 55(c) "good cause" standard is "not susceptible to a precise formula") (citation omitted).  Accordingly, no talismanic significance is accorded any of these factors; rather, the overarching question is whether circumstances exist that warrant a finding of good cause to set aside the default.  *Compania Interamericana*, 88 F.3d at 951 ("Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default.").

        **B.**        *Defendants' Showing is Inadequate.*

Through affidavits (although, strangely, none by Hillery or Jones) and arguments of counsel, defendants attempt to establish the requisite good cause for their failure to file a responsive pleading until 79 days after service of process, and 52 days after entry of default against them.[4]  Their proffered explanation (whose facts are verified in counsel's affidavit) is as follows: Sometime prior to August 2008, defendants' present counsel (T. Blake Liveoak, Esq.) spoke with Hillery, Jones and a referring attorney about "this case" (presumably meaning Hillery and Jones' dispute with American Family Home Insurance Company relating to the insurance claim at issue here).  Defendants did not retain Liveoak at that time to represent them against

---

excuse, whether setting aside the default would prejudice the other side, whether the defaulting party presents a meritorious defense, and whether the defaulting party acted promptly to correct default); *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (relevant factors include willfulness of default, prejudice to adversary if default is set aside, existence of meritorious defense, movant's explanation for default, parties' good faith, amount of money involved, and timing of motion to set aside default).

      [4]      The relevant procedural facts are these: Hillery and Jones were served with process via certified mail on October 9, 2008.  (Doc. 5.)  Pursuant to Rule 12(a) and the instructions on the face of the Summonses, defendants' answers or other responsive pleadings were due on or before October 29, 2008.  Yet defendants did not appear in this action until their attorney filed a Notice of Appearance (doc. 9) on December 2, 2008, and did not file an Answer (doc. 12) until December 27, 2008.  The Clerk's Entry of Default (doc. 7) was entered at plaintiff's request upon proper showing on November 5, 2008.

American Family.  In August 2008, Liveoak separated from his former law firm (the "Firm") under acrimonious circumstances that blossomed into litigation.  According to Liveoak, the Firm prohibited him from contacting its clients (including prospective clients, such as Hillery and Jones) and refused to provide anyone (clients, referring or opposing attorneys, etc.) with his new contact information.  The net result was that Hillery, Jones and the referring attorney were unable to reach Liveoak, and Liveoak was unable to reach them, "for some time."

      Liveoak maintains that he did not learn of the existence of the Complaint in this case until approximately December 1, 2008, when he stumbled across it in a packet of forwarded mail from the Firm.[5]  Liveoak says he filed a Notice of Appearance and began drafting a responsive pleading immediately, but it took several weeks for him to obtain permission from the Firm to contact Hillery, Jones and the referring attorney.[6]  When Liveoak was finally authorized by the Firm on Christmas Eve to contact Hillery and Jones, they told him that they had been trying to contact him "for a long time."[7]  At that time, Liveoak learned for the first time about plaintiff's application for entry of default, though he says he remained unaware that default had already been entered against his clients.  On December 27, 2008, just three days after establishing contact with defendants, Liveoak filed an Answer and Counterclaim (doc. 12) in this matter on behalf of Hillery and Jones, only to learn two days later of the Clerk's Entry of Default (doc. 7)

---

[5] It is not clear how the Complaint came to be received at the Firm in the first place.  Apparently (although defendants have made no direct showing of this), Hillery and Jones sent the Complaint to Liveoak after service of process for unknown reasons, given that they had never retained him.  Defendants' showing would have been greatly strengthened had they clarified exactly what Hillery and Jones did, when they did it, and why they did it, instead of leaving the Court to make speculative assumptions and draw shadowy inferences from a fragmentary record.

[6] This sequence of events is puzzling.  Liveoak avers that he had not been retained by Hillery and Jones to represent them in the American Family matter during their pre-August discussion(s), and that he had no contact with them between August and early December.  If that is so, then why did Liveoak appear as counsel of record for Hillery and Jones on December 2, 2008, when he had not been retained by them and had had no contact with them since the filing of this lawsuit?

[7] Again, it would have been extraordinarily helpful for defendants to submit statements from Hillery and/or Jones, documenting their efforts to contact Liveoak during the time period in question.

that had been entered back on November 5, 2008.[8]  Although he was out of town on his honeymoon, Liveoak took immediate steps to attempt to have the default set aside.

As the above footnotes allude, this story suffers from substantial holes and logical gaps.  Most significantly, it focuses on counsel's circumstances, when what really matters are defendants' acts and omissions.  Even if Liveoak did not know what was happening, defendants plainly did.  Hillery and Jones were served with process on October 9, 2008.  At that time, they received Summonses indicating that they <u>must</u> respond to the Complaint within 20 days and that if they failed to do so, a default judgment might be entered against them.[9]  Perhaps Hillery and Jones tried and were unable to reach Liveoak, thanks to the ongoing turf war between Liveoak and the Firm.  But why didn't Hillery and Jones, knowing they faced a mandatory obligation to answer the Complaint within 20 days, go out and hire another lawyer after it became evident that Liveoak was incommunicado?  Why did they not file a *pro se* responsive pleading or a *pro se* request for enlargement of time to afford them an opportunity to either locate Liveoak or retain someone else?  The disappearance of Liveoak (a lawyer whom they had not yet retained to represent them) hardly confers license on Hillery and Jones to shrug their shoulders and abdicate all responsibility for this lawsuit for two and a half months (if that's in fact what they did).  This concern is amplified by the fact that Hillery and Jones knew well before their Christmas Eve contact with Liveoak that default proceedings were underway.  The Clerk of Court mailed a copy of the Clerk's Entry of Default (doc. 7) to defendants at their service address contemporaneously with its entry on November 5.  The Clerk of Court likewise mailed Hillery and Jones a copy of

---

[8]  Of course, the Clerk's Entry of Default in this case is and has always been a matter of public record.  Had Liveoak checked with the Clerk's Office, logged onto PACER to review the docket sheet, or (presumably) called plaintiff's counsel to inquire about the status of the action at any time prior to December 29, 2008, he would have learned of the default much sooner.  Thus, Liveoak bears personal responsibility for his failure to appreciate the procedural posture of this action between December 1 (when he received a copy of the Complaint) and December 29 (when he first learned about the default).

[9]  The precise language in the Summonses stated that Hillery and Jones were required to file and serve "a response to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service.  IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT."  (Doc. 3.)

the November 26 Order (doc. 8) concerning the prospective default judgment against defendants, and American Family mailed defendants a copy of its December 9 Response (doc. 10) to that Order. The Court has no information before it that Hillery and Jones ever did <u>anything</u> in response to their actual notice that a Clerk's Entry of Default had been entered against them and default judgment proceedings were moving forward. Without some record explanation for Hillery and Jones' conduct, these facts strongly suggest "intentional or reckless disregard for the judicial proceedings," constituting a willful default that would justify outright denial of their Rule 55(c) Motion. *Compania Interamericana*, 88 F.3d at 951-52. These facts also suggest that defendants failed to act promptly to correct the default upon receiving notice.

      *C.*     *Conclusion.*

In light of these concerns, defendants are **ordered**, on or before **January 30, 2009**, to supplement the record with affidavits, exhibits and authority, as appropriate, showing that Hillery and Jones (as distinguished from Liveoak, whose conduct is described in detail in the record) were not willfully in default and that they took prompt action to set aside the default.[10] Plaintiff may file a response, supported by exhibits and legal authority as appropriate, to defendants' Rule 55(c) submission (as supplemented) on or before **February 6, 2009**. If the Court determines that oral argument is necessary, the parties will be notified and a hearing will be scheduled. Otherwise, defendants' request to set aside the Clerk's Entry of Default will be taken under submission after February 6, 2009.

DONE and ORDERED this 23rd day of January, 2009.

                                                              s/ WILLIAM H. STEELE
                                                             UNITED STATES DISTRICT JUDGE

---

[10] Defendants' supplementation is to be confined to the narrow issues of (a) why Hillery and Jones should not be deemed to have intentionally or recklessly disregarded these judicial proceedings based on their inaction after being served with process, and (b) whether defendants acted promptly to correct the default upon receiving notice of same. The Court neither invites nor authorizes supplementation regarding any other aspect of defendants' Rule 55(c) request.