IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **AMERICAN FAMILY HOME** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 08-0547-WS-C |
| | ) |
| **TYRONE HILLERY**, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court yet again on the questions of whether a default judgment should be entered against defendants pursuant to Rule 55(b)(2), Fed.R.Civ.P., or, alternatively, whether the Clerk's Entry of Default against defendants should be set aside pursuant to Rule 55(c).[1] With the parties' latest filings, including defendants' Evidentiary Submission (doc. 19) and plaintiff's Response (doc. 20) thereto, the Court now deems the record closed as to the default / default judgment issues.

In previous submissions seeking to set aside the default, defendants emphasized the dislocations wrought by defense counsel's acrimonious split with his previous law firm (the "Firm"), which effectively cut off counsel from his clients and rendered counsel unaware of the pendency of this lawsuit until well after entry of default against defendants. Defendants also asserted that they had a meritorious defense to plaintiff's claims. The gravamen of the Complaint is that plaintiff owes no insurance benefits to defendants, and defendants must disgorge benefits previously paid by plaintiff, because defendants made unspecified intentional misrepresentations to plaintiff concerning the loss and may have intentionally caused or procured

---

[1] The Court has previously addressed default and default judgment issues, including the need for supplemental information concerning same, in Orders dated November 26, 2008; December 29, 2008; December 30, 2008; and January 23, 2009. (*See* docs. 8, 13, 15, and 18.)

the fire that damaged their mobile home and its contents in Thomasville, Alabama on December 15, 2007.[2]  Defendants dispute these accusations of malfeasance, insisting that they made no intentional misrepresentations and that they were Christmas shopping with their family at a Circuit City store in Mobile when the fire broke out, such that they could not have started the blaze.[3]  In addition to contesting plaintiff's right to relief against them, defendants seek to level counterclaims against plaintiff for breach of contract, bad faith, misrepresentation, suppression and negligence based on plaintiff's investigation and denial of defendants' insurance claim.  Of course, those counterclaims would necessarily fail if the default were not set aside, given that the legal effect of defendants' default is to admit all well-pleaded factual allegations in the Complaint.

Defendants' previous filings offered only the perspective of defendants' counsel with respect to the default, and failed to include any explanation by defendants themselves as to their failure to submit a responsive pleading within the time period prescribed by the Federal Rules of Civil Procedure.  Defendants' latest Evidentiary Submission (doc. 19) corrects this omission via affidavits from defendants Tyrone Hillery and Shelia Jones documenting why they tarried so long in filing a responsive pleading.  This evidentiary submission establishes the following salient facts: (a) Hillery handled all contacts with counsel on behalf of both himself and Jones

---

[2] The damages claimed by plaintiff appear to bear questionable nexus to the terms of the subject insurance policy.  The Complaint for Declaratory Judgment (doc. 1) requested that defendants "reimburse AFHIC for all proceeds paid or advanced during the claim investigation, any payment to the mortgagee named on the policy, and all costs incurred during prosecution of this declaratory judgment, including attorney's fees, court costs and interest."  (Doc. 1, at 14.)  In a later filing, plaintiff tallied these amounts at $18,189.97, the bulk of which constituted legal fees and costs incurred by AFHIC in prosecuting this action.  Apparently, plaintiff contends that its litigation and investigative expenses are recoverable under the subrogation provision of the policy which provides, in part, that "[a]fter making payment under this policy, we will have the right to recover from anyone held responsible."  (Doc. 1, Exh. A, at page 17 of 18.)  It is far from clear that investigation costs or legal fees in a declaratory judgment action filed to protect the insurer's own interests amount to a "payment under this policy" that might trigger the subrogation clause; however, the Court need not decide that question today.

[3] Defendants contend that someone broke into their home while they were away, stole numerous items and started a fire.  Defendants emphatically deny having any involvement whatsoever in the cause or origin of that fire.

(his wife); (b) prior to service of process, defendants' understanding was that attorney T. Blake Liveoak (who they understood worked at the Firm) would represent them if their dispute with plaintiff American Family Home Insurance Company ("AFHIC") were not resolved amicably; (c) upon being served with process in October 2008, Hillery promptly called the Firm, was told that Liveoak was "unavailable," and left a message indicating that he had been served; (d) when Liveoak failed to return the call within a few days, Hillery called the Firm again, was told that Liveoak was with a client, and left another message that he had been served with legal documents; (e) when Liveoak failed to return that call within a few days, Hillery called the Firm a third time, was told that Liveoak was gone for the day, and was instructed to "simply mail the legal documents" to the Firm, which he did; (f) after mailing the documents, Hillery assumed that Liveoak would take any necessary actions in court to respond to those papers; (g) in early November, Hillery received additional court documents in the mail,[4] which "confused" him given his assumption that Liveoak had already responded; (h) Hillery called the Firm again, at which time he was directed to mail the additional documents to the Firm and was told that Liveoak would contact him immediately; (i) after the passage of another week or two, Hillery called the Firm a fifth time, at which time he was finally told that Liveoak no longer worked there, but the Firm refused to give him Liveoak's new contact information;[5] (j) Hillery contacted what he now knew to be Liveoak's former law firm a sixth time and was finally given a cell phone number for Liveoak even though the woman who gave it to him said that she "was not supposed" to do so; and (k) several days later, Hillery and Liveoak successfully established contact for the first time since service of process, setting in motion a sequence of events culminating in the filing of defendants' proposed Answer and Counterclaim (doc. 12) shortly

---

[4] These documents would have been copies of the Clerk's Entry of Default against Hillery and Jones, which was entered on November 5, 2008.

[5] The Liveoak affidavit submitted previously established that Liveoak left the Firm back in August 2008, well before the first of Hillery's telephone calls after being served with process. As such, defendants' facts are that the Firm misled Hillery on four different occasions in October and November 2008 about Liveoak's status, and that Hillery relied on that misinformation in assuming that his messages were reaching Liveoak (even though they were not) and in following instructions to mail court papers to Liveoak in care of the Firm (which did not forward those papers to Liveoak in a timely manner).

thereafter.

It is well established in this Circuit that "a district court may set aside an entry of default only if the defaulting party can provide a good reason for the district court to do so." *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999).  In determining whether the requisite good cause or good reason exists, courts balance an array of factors, including principally whether the default was willful, whether setting aside the default would prejudice the plaintiff, and whether the defendant had a meritorious defense.  *See Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).[6]  That said, the Rule 55(c) "good cause" inquiry for setting aside a default is mutable, flexible, not susceptible to a precise formula, and dependent on the particular circumstances of the particular case.  *See id.*; *Lee v. Golden Fortune Int'l, Inc.*, 2009 WL 36452, *1 (M.D. Fla. Jan. 6, 2009) ("Good cause is a liberal, elastic standard that does not have a precise formula.") (citation omitted).

The Court finds that, taken in the aggregate, the facts and circumstances proffered by defendants satisfy their burden of showing good cause.  As an initial matter, the Hillery Affidavit persuades the Court that defendants' default was not willful.  Upon being served with process, defendants promptly and repeatedly contacted what they understood to be the office of Liveoak, the attorney whom they had arranged to represent them if their dispute with AFHIC degenerated into litigation.  Defendants did not know that Liveoak had separated from the Firm.  Shockingly, the Firm did not disclose this information for a period of months, but instead fed defendants a steady stream of misinformation (*i.e.*, that Liveoak was with a client, that Liveoak had left the office for the day, that Liveoak was unavailable, etc.), thereby perpetuating the false impression

---

[6]    *See also Hinson v. Webster Industries*, 240 F.R.D. 687, 690 (M.D. Ala. 2007) (in applying "good cause" standard of Rule 55(c), courts consider, among other things, whether default was culpable or willful, which entails evaluating the plausibility of the defaulting party's excuse, whether setting aside the default would prejudice the other side, whether the defaulting party presents a meritorious defense, and whether the defaulting party acted promptly to correct default); *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (relevant factors include willfulness of default, prejudice to adversary if default is set aside, existence of meritorious defense, movant's explanation for default, parties' good faith, amount of money involved, and timing of motion to set aside default).

that Liveoak was still working there and that Liveoak was receiving their messages. Rather than telling Hillery that Liveoak no longer worked there, the Firm led Hillery to believe that he did. To make matters worse, each time Hillery expressed concern that he had received court papers, the Firm advised him to mail the papers to the Firm for Liveoak's review. Defendants reasonably followed those instructions. Of course, Liveoak did not work there anymore and the Firm did not timely forward the papers to him, but defendants had no way of knowing that because of the Firm's misleading communications. By all appearances, defendants' failure to file a responsive pleading in a timely manner stems directly from the Firm's misleading and incorrect statements to defendants concerning Liveoak's whereabouts, whether out of spite towards Liveoak or an ill-conceived attempt to filch Hillery and Jones as clients of the Firm. Either way, defendants were badly disserved by the turf war between the Firm and Liveoak, and this Court will not punish them for the resulting chaos and confusion they faced through no fault of their own.

      None of this should be construed as a judicial determination that defendants did everything in their power to avoid a default. They plainly did not. In hindsight, they should neither have trusted the Firm's reassurances nor assumed that Liveoak had received their numerous messages or their multiple mailings of court papers. But Rule 55(c) does not demand utmost diligence of litigants as a precondition to the setting aside of a default. *See, e.g., Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993) (explaining that "a defendant in a suit alleging millions of dollars in damages ... had a duty to act with ***some diligence*** to ensure that his attorney was protecting his interests") (emphasis added). This is not a case in which defendants simply ignored service of process. Nor is it a case in which they left a perfunctory message at their lawyer's office and took no further action. Here, defendants called their lawyer's office over and over again. Each time, they were led to believe (falsely) that Liveoak was still working there and that their messages would be conveyed to him promptly. On two occasions, defendants followed specific instructions to mail their court papers to the Firm for Liveoak's review; however, unbeknownst to them, Liveoak did not work there and the Firm did not forward those documents to him for some time. That defendants did not do everything they possibly could have done to avoid a default does not render their default willful. To the contrary, the Court specifically finds that defendants acted with some diligence in the matter,

that their diligence was thwarted by the Firm's misleading communications on which defendants reasonably relied, that defendants did not proceed with intentional or reckless disregard for these proceedings, and that their factual showing is fundamentally inconsistent with any willful default.

As for the other *Compania Interamericana* factors, it is quite plain that setting aside the default would work no prejudice on AFHIC.  Plaintiff weakly suggests otherwise, arguing that "[i]f entry of default is set aside, AFHIC will have to expend considerable time and funds to contest this matter even though Hillery and Jones can offer no reasonable defense to the complaint."  (Doc. 20, at ¶ 11.)  The Court cannot make such a leap of logic.  It is far from clear at this juncture that Hillery and Jones lack a reasonable defense to the Complaint.  For example, AFHIC claims that it should be excused from paying insurance benefits because Hillery and Jones made unspecified intentional misrepresentations about unspecified material matters.  But Hillery and Jones deny having made any intentional misrepresentations to AFHIC.[7]  AFHIC also claims that coverage is properly denied because of Hillery's and Jones' criminal acts in causing or procuring the fire.  But defendants unequivocally deny having had anything to do with the fire, and offer evidence that they were Christmas shopping almost 100 miles away when the blaze began.  Defendants assert that the fire was started by a burglar who broke into their home and stole their belongings while they were away.  If proven, such facts would plainly be a meritorious defense to claims asserted in the Complaint.  The Court therefore cannot accept plaintiff's arguments that defendants lack a meritorious defense and that AFHIC would somehow be prejudiced by having to prove its case on the merits rather than prevailing via

---

[7]   AFHIC lambastes defendants' position as a mere "general denial" which is inadequate to establish a meritorious defense.  It is true that general denials have been deemed insufficient in that regard.  *See In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1296 (11th Cir. 2003) ("a moving party cannot satisfy the burden of showing a meritorious defense simply by asserting a general denial") (internal quotation marks omitted).  The problem here is that AFHIC's Complaint fails to delineate what Hillery's and Jones' intentional misrepresentations allegedly were.  *See* Complaint, ¶¶ 22, 34-35.  Without knowing what intentional misrepresentations they are alleged to have made, how can defendants possibly provide anything more than a general denial that they made them?  By faulting defendants for not providing specific details rebutting AFHIC's nonspecific accusations of misrepresentation, plaintiff adopts a position that is both unreasonable and untenable.

default judgment.

With respect to other relevant considerations, the Court observes that there is no hint of bad faith exhibited in defendants' conduct, that defendants acted promptly to set aside the default after Hillery and Jones finally learned the truth of their lawyer's whereabouts and were able to establish contact with him, and that the consequences of a default would be devastating from defendants' standpoint given that it would negate all rights they may have to coverage under the AFHIC policy for their fire loss, derail their counterclaims, and expose them to a potential judgment of many thousands of dollars depending on the viability of AFHIC's damages claims. All of these considerations militate in favor of setting aside the default.

Simply put, based on the peculiar case-specific facts and circumstances demonstrated by defendants in their Rule 55(c) request and supplemental evidentiary submission, and bearing in mind federal courts' strong preference for resolving disputes on their merits,[8] the Court finds in its discretion that defendants have met their burden of showing good cause to set aside the default.  Accordingly, the Clerk's Entry of Default (doc. 7) is hereby **set aside** pursuant to Rule 55(c), Fed.R.Civ.P., and plaintiff's Motion for Default Judgment (doc. 6-2) is **denied**.  In light of these determinations, the Court accepts Defendants' Counterclaim and Answer (doc. 12) as their responsive pleading in this action.  AFHIC is **ordered** to file its answer to the Counterclaim by no later than **February 25, 2009**.

DONE and ORDERED this 5th day of February, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[8] *See Insituform Technologies, Inc. v. AMerik Supplies, Inc.*, --- F. Supp.2d ---, 2008 WL 5133599, *2 (N.D. Ga. Nov. 17, 2008) ("any doubts regarding whether to set aside an entry of default should be resolved in favor of the party seeking relief"); *McGarey v. York County*, 233 F.R.D. 220, 222 (D. Me. 2006) (rule governing defaults "is tempered by the philosophy that actions should ordinarily be resolved on their merits") (citation omitted); *McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002) ("Because defaults are generally disfavored, courts resolve such motions so as to encourage a decision on the merits.").