**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **TYRONE HILLERY**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) CIVIL ACTION 08-0547-WS-C |
| | ) |
| **ALLSTATE INDEMNITY COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter comes before the undersigned on defendant's Motion for Summary Judgment (doc. 55), defendant's Motion to Strike Affidavit of Tyrone Hillery (doc. 59), and plaintiffs' Motion to Strike (doc. 60). The motions have been briefed and are now ripe for disposition.[1]

**I.      Nature of the Action.**

Plaintiffs, Tyrone Hillery and Shelia Jones, resided in a mobile home in Thomasville, Alabama that was damaged in a fire on December 15, 2007. Following that loss, Hillery made a claim to defendant, Allstate Indemnity Company, for payment of insurance benefits pursuant to a manufactured home policy that Allstate had issued to Hillery. In September 2008, after a protracted investigation, Allstate denied coverage for the stated reasons that (i) the insured had made material misrepresentations to Allstate, and (ii) the fire had been intentionally set, and the

---

[1]      This action consists of two consolidated actions that were originally filed as Civil Actions 08-0547-WS-C and 09-0022-WS-N. Pursuant to the July 2009 consolidation, all filings in Civil Action 09-0022 were extracted and made part of the file in Civil Action 08-0547, and Civil Action 09-0022 was statistically closed. (*See* doc. 38.) Following consolidation, the parties and the Court have hewed to the convention of using the style of the lead case (which was *American Family Home Insurance Company v. Tyrone Hillery & Sheila Jones*) as the caption of the consolidated matter. On October 14, 2009, however, the Court dismissed all claims by and between American Family Home Insurance Company ("AFHIC"), on one side, and Hillery and Jones, on the other, pursuant to a stipulation of dismissal. (*See* doc. 46.) Because AFHIC is no longer a party, there is no need to reference claims pertaining to that entity in the caption of this matter. The caption of this Order reflects only Hillery's and Jones' claims against Allstate Indemnity Company, because those are the only remaining parties and causes of action joined herein.

insured had the motive, means, and opportunity to participate in an act of arson.

On January 14, 2009, Hillery and Jones filed a Complaint against Allstate, interposing state-law causes of action for breach of contract, bad faith, misrepresentation, suppression and negligence in connection with Allstate's claims handling processes and denial.[2]  Allstate has now moved for summary judgment on each of these claims.  The parties disagree as to the proper scope of the record, and have moved to strike certain of each other's exhibits.  Because the contours of the record cannot be defined absent resolution of those motions to strike, the Court will address them before turning to the summary judgment motion.

## II.   Motions to Strike.

### A.   Defendant's Motion to Strike.

In opposition to the Motion for Summary Judgment, plaintiffs submitted the six-page Affidavit of Tyrone Hillery.  Defendant contends that the Hillery Affidavit should be stricken in its entirety as a sham.

"Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003); *see also Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 284 (S.D. Ala. 2006) (explaining and applying "sham affidavit" rule).  That said, the Eleventh Circuit has cautioned against expansive application of this rule, noting that it must be "applied sparingly because of the harsh effect it may have on a party's case."  *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007) (citation and internal quotations omitted).  For that reason, applicable case law "require[s] the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."  *Id.* (citation omitted); *see also Keaton v. Cobb County*, 545 F. Supp.2d 1275, 1295 (N.D. Ga. 2008) (sham affidavit rule is applied sparingly and only in presence of inherent inconsistency between affidavit and deposition testimony).  "If no inherent inconsistency exists, the general rule allowing an affidavit

---

[2]      Plaintiffs predicated federal subject matter jurisdiction on 28 U.S.C. § 1332, based on the existence of diversity of citizenship between plaintiffs and Allstate.  The Complaint specifically pleaded that plaintiffs and Allstate were of diverse citizenship and that the amount in controversy, exclusive of interest and costs, exceeded the $75,000 jurisdictional threshold.

to create a genuine issue even if it conflicts with earlier testimony in the party's deposition ... governs." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (internal quotation marks, citations and footnote omitted).

In furtherance of its Motion to Strike, Allstate identifies only two areas of inconsistency between Hillery's deposition of October 6, 2009, and his summary judgment affidavit dated February 3, 2010.  First, Allstate contends that Hillery admitted in his deposition that he had provided false information to the insurance agent in completing his insurance application, only to change his story in his summary judgment affidavit by averring that he had provided truthful information to the agent, who had apparently recorded his answers inaccurately.  Second, Allstate maintains that Hillery testified in his deposition that he knew of his AFHIC insurance coverage at the time of his January 3, 2008 recorded statement, but that he professes in his affidavit to have been unaware of that coverage when he gave his recorded statement.

On this record, these identified discrepancies do not satisfy the high threshold necessary to warrant application of the sham affidavit rule.  With respect to the policy application, Hillery certainly conceded in his deposition that some of the written answers set forth in his application form were not accurate.  In particular, he acknowledged that there were more than four people living in the home at the time of the application, that he had previously experienced a cancellation of insurance coverage, and that there were pets on the premises, all in contradiction of data contained in the application.  But this is not enough.  For Hillery to admit that written information in his application (which he did not fill out himself) is wrong is not necessarily equivalent to an admission that he lied to the agent who completed the application form on his behalf.  In that regard, defendant points to no deposition excerpt wherein Hillery unambiguously stated that he had supplied false information to the agent in these areas.  At best, Allstate relies on the following exchange:

> "Q:    Did you provide this information to the agent and then sign the application?
> "A:    Yes."

(Hillery Dep., at 33-34.)  But what does "this information" mean?  Was the interrogator referring to the false information recited on the application form, or the truthful information that Hillery had been discussing for the previous three pages of the deposition transcript?  Given the ambiguity in the deposition on this point, there is no inherent inconsistency, but merely a

possible inconsistency, between the cited portions of the deposition transcript and Hillery's statement in his affidavit that he had supplied truthful information to the agent.  Accordingly, Allstate has not made a sufficient showing to support striking this portion of Hillery's affidavit pursuant to the sham affidavit rule.

Concerning the AFHIC insurance coverage issue, there is likewise no showing of an inherent inconsistency between Hillery's deposition testimony and his summary judgment affidavit.  On this point, defendant characterizes the affidavit as including a statement that Hillery "was unaware of whether or not he had insurance with [AFHIC] ... [when] Mike Rocchio took his recorded statement."  (Doc. 59, at 3-4.)  Defendant does not identify the specific portion of Hillery's affidavit where it contends this statement was made.  Upon review, the Court finds no such statement contained in the affidavit; to the contrary, that document specifically indicates that Hillery had determined that the AFHIC policy was in effect on the same day that he filed claims with AFHIC and Allstate, all of which happened prior to the recorded statement.  (Hillery Aff., at 3.)  Once again, Allstate incorrectly invokes the sham affidavit rule.  Not only is there no inherent inconsistency as to Hillery's awareness of AFHIC coverage at the time of his recorded statement, but there appears to be no inconsistency at all.  The Court will not strike Hillery's summary judgment affidavit based on Allstate's strained and unsupported interpretation of it.

For the stated reasons, the Court concludes that Allstate has failed to establish the existence of an inherent inconsistency between Hillery's deposition testimony and his summary judgment affidavit.[3]  Accordingly, defendant's Motion to Strike Affidavit of Tyrone Hillery (doc. 59) is **denied**.

### B.    *Plaintiffs' Motion to Strike.*

Plaintiffs counter Allstate's Motion to Strike with one of their own, wherein they target the following four defense exhibits: the Affidavit of Kathi Libby found at Exhibit Q to the

---

[3]    In addition to the two specific instances of alleged inconsistency discussed above, Allstate also states as a ground for its Motion to Strike that "[i]n general, the Plaintiff's Affidavit sets forth a number of assertions that were on the subject of questioning at his deposition."  (Doc. 59, at 4.)  The Court will not extrapolate from this "general" objection to a *sua sponte* line-by-line comparison of the affidavit and deposition transcript in hopes of uncovering an inherent inconsistency that defendant failed to identify.

Motion for Summary Judgment, the recorded statements of Hillery and Jones found at Exhibits C and J, and the Green Tree letter found at Exhibit L.  The Court will address each of plaintiffs' objections in turn.

> 1.      *Objections to Libby Affidavit.*

First, plaintiffs urge the Court to strike the Affidavit of Kathi Libby, an Allstate employee who addresses the implications of omitted facts from Hillery's application form (such as the business use of the premises and the presence of a Rottweiler and pit bull on the premises) in terms of Allstate's internal processes and risk assessment.  Plaintiffs insist that Libby's statements amount to expert testimony, and that her affidavit must be stricken because she was not properly disclosed as an expert.  This objection fails because plaintiffs have offered no legal basis to bolster their conclusory premise that Libby "is clearly providing expert testimony." (Doc. 60, at 2.)  Upon inspection, Libby's Affidavit does not contain expert testimony; rather, it sets forth statements of fact by an Allstate employee about internal corporate procedures and how disclosure of certain facts would have affected those procedures, all based on her own personal knowledge and perceptions.  To the extent that Libby's Affidavit offers opinions, they constitute lay opinions that lie comfortably within the ambit of Rule 701, Fed.R.Evid.  As such, defendant was not obligated to disclose Libby as an expert.[4]

Even if Libby were properly classified as an expert, her nondisclosure would not warrant striking her Affidavit if "the failure was substantially justified or is harmless."  Rule 37(c)(1), Fed.R.Civ.P.  Under the circumstances presented here, plaintiffs cannot reasonably profess to have incurred prejudice.  From the outset of this litigation, Allstate has consistently maintained

---

[4]      *Cf. American General Life Ins. Co. v. Schoenthal Family, LLC*, 248 F.R.D. 298, 305-06 (N.D. Ga. 2008) (insurance company employee's statements about company's business and underwriting practices, as applied to particular insurance policy, are not expert opinions, but are instead fact testimony based on witness's factual knowledge as employee); *In re Acceptance Ins. Companies, Inc. Securities Litigation*, 352 F. Supp.2d 940, 946 (D. Neb. 2004) (Rule 702 inapplicable to witnesses whose statements were part of factual record of case, and who had not been retained to serve as expert witnesses or to prepare expert opinions in this case); *Young v. United States*, 181 F.R.D. 344, 346 (W.D. Tex. 1997) ("[I]t is a well settled rule of law that employee-experts who acquire information for trial solely because they were actors or viewers with respect to the occurrences forming the subject matter of the lawsuit must be treated as ordinary fact witnesses, and *not* as experts.").

that Hillery's policy is void because of "misrepresentation in the application and misrepresentation in the proof of the claim." (Doc. 39, Exh. 6, at Eighteenth Defense.) By all appearances, however, plaintiffs never interposed discovery requests directed at this defense, much less sought to depose any Allstate representative (via Rule 30(b)(6) designation or otherwise). Had they pursued discovery on this defense, plaintiffs would have had a full opportunity to depose Libby or another Allstate representative on this precise topic. Given plaintiffs' failure to seek discovery on the misrepresentation defense despite actual notice of same, there is no reason to believe that they would have conducted themselves differently had they known that Allstate was planning to offer Libby's opinions in furtherance of that defense.

Plaintiffs' remaining objections to the Libby Affidavit may be disposed of quickly. For example, plaintiffs contend that the Affidavit contains "conclusory statements," without identifying same. (Doc. 60, at 2-3.) But the Court finds that the Libby Affidavit contains sufficiently specific, detailed factual averments to comport with the requirement that affidavits "must be rooted in facts, rather than conclusory remarks." *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp.2d 1232, 1239 (S.D. Ala. 2006) (striking portions of affidavit that "state unvarnished legal conclusions" such as that a particular person is an entity's alter ego, that a party's actions infringed on a patent, and the like, with no factual predicate). Equally unfounded is plaintiffs' vague objection to statements that "are based on inadmissible hearsay." (Doc. 60, at 3.) The Court's review of the Libby Affidavit does not reveal any references to statements made by others that the declarant is offering for their truth.[5] This hearsay objection is therefore meritless.

For these reasons, plaintiffs' request to strike the Affidavit of Kathi Libby is **denied**.

      2.     *Objections to Plaintiffs' Statements.*

---

[5]    To be sure, Libby avers that her understanding is that plaintiffs' mobile home was being used as a beauty salon as well as a private residence, and that two dogs were kept on the property. (Libby Aff., ¶ 2.) Implicit in Libby's statements is an understanding that this information was not disclosed in the policy application form. But Libby is not presenting any of these statements as fact; to the contrary, the only facts that she offers concern how Allstate would have proceeded during the application process had these circumstances been known to it. These statements are not hearsay. Accordingly, Libby's references to statements of others are not subject to exclusion on hearsay grounds.

Next, plaintiffs seek to strike the recorded statements of Hillery and Jones found at defendant's Exhibits C and J on the grounds that they have not been properly authenticated, are hearsay, violate the best evidence rule, and flunk the Rule 403 balancing test. None of these objections are meritorious.[6]

As an initial matter, plaintiffs object that the statements of Hillery and Jones in the summary judgment record have not been properly authenticated and are therefore inadmissible. It is true, of course, that authentication of an exhibit is a condition precedent to admissibility. *See* Rule 901, Fed.R.Evid. But this is not an evidentiary hearing. The Court is not deciding whether or not to admit into evidence any exhibits contained in the voluminous summary judgment record. Plaintiffs' Motion to Strike not only overlooks this critical distinction, but proceeds from an invalid assumption that all prerequisites of admissibility must be satisfied before an exhibit may be considered on summary judgment. The law is otherwise. *See, e.g., Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218, 1223 (S.D. Ala. 2008) ("The general rule in this Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial.") (citations omitted). All appearances are that the transcripts of the recorded statements of Hillery and Jones found in the summary judgment record can be readily reduced to admissible form at trial; therefore, the authentication objection is not a valid basis for striking those exhibits at this time.

Equally unavailing is plaintiffs' suggestion that the recorded statements of Hillery and Jones are hearsay. It is hornbook law that when a party's own statement is offered against that party, it constitutes an admission by a party opponent, and is not hearsay. *See* Rule 801(d)(2), Fed.R.Evid.; *United States v. Register*, 182 F.3d 820, 831 (11th Cir. 1999) ("a party's own admissions are admissible as non-hearsay evidence if offered against him"). Plaintiffs' own recorded statements are not due to be stricken as hearsay when Allstate seeks to use them against

---

[6] Plaintiffs' repeated references in its Motion to "Ex. C brief recorded statement of Tyrone Hillery" are puzzling. Exhibit C is a 51-page printout of Allstate's claim history report. It does not purport to contain a transcript of any "brief recorded statement" by Hillery, but is rather a running log of Allstate's internal communications pertaining to the receipt, investigation and processing of Hillery's claim for benefits. As such, it is unclear how Exhibit C (as generically cited by plaintiffs) is implicated by plaintiffs' objections.

plaintiffs.

As for the objection to the transcripts under the best evidence rule, plaintiffs misapply the Federal Rules of Evidence and overlook the substantial body of precedent endorsing the routine practice in federal court of utilizing transcripts as aids, without regard to best evidence concerns, especially where the original recordings are available. *See generally United States v. Morales-Madera*, 352 F.3d 1, 9 (1st Cir. 2003) ("This practice of admitting reliable English transcripts in evidence is entirely consistent with the best evidence rule."); *United States v. Holton*, 116 F.3d 1536, 1545 (D.C. Cir. 1997) ("When the original tape is available and presented to the jury and the accuracy of the transcript has been stipulated or is made an issue for the jury to decide, concerns addressed by the best evidence rule are not at issue."). There is nothing improper about Allstate's inclusion of transcripts of recorded statements by Hillery and Jones in the record. The evidence contained in those transcripts (*i.e.*, the actual statements made by plaintiffs) is capable of being reduced to admissible form at trial, in that the tapes themselves can be played for the jury. Plaintiffs' suggestion -- that federal courts must independently listen to audio recordings of lengthy recorded statements in their entirety on summary judgment, and must shield their eyes against any transcript even in the absence of any contention that the proffered transcript is inaccurate or misleading in some way -- is both unwieldy and devoid of support in the law or the Federal Rules of Civil Procedure.[7]

Finally, plaintiffs' undeveloped Rule 403 objection is meritless. What plaintiffs did or did not tell Allstate during the claims investigation process is highly relevant, and plaintiffs have failed to come forward with any reasonable basis for concluding that the danger of unfair prejudice from admitting their own statements against them would substantially outweigh their probative value. The Court will not flesh out plaintiffs' evidentiary objections for them.

For these reasons, plaintiffs' Motion to Strike is **denied** as to Exhibits C and J of

---

[7]    It would be different if, for example, plaintiffs contended that the transcripts of the recorded statements were inaccurate in some material way. In that circumstance, it may be appropriate for the parties to submit a copy of the recording as a summary judgment exhibit so the Court could hear for itself. Here, however, Hillery and Jones do not insinuate that the transcripts are inaccurate or distorted, but simply attempt to parlay their own misreading of the best evidence rule into an exclusion of important, relevant exhibits on summary judgment.

defendants' summary judgment submission.

### 3. Objections to Green Tree Letter.

Plaintiffs' final objection is to Defendants' Exhibit L, which purports to be a letter from nonparty Green Tree-AL LLC to Hillery dated December 14, 2007. According to plaintiffs, Exhibit L is due to be stricken on the grounds that it is unauthenticated, hearsay, and violative of Rule 403. The authentication objection fails for the same reason that it did as to Exhibits C and J, inasmuch as all indications are that Exhibit L can be reduced to admissible form at trial. And Exhibit L is not hearsay because Allstate does not seek to introduce it to prove the truth of the matter asserted (*i.e.*, that Hillery owed Green Tree a past due amount of $1,240.92 as of December 14, 2007), but rather relies on it as evidence of information in Allstate's possession when it made its coverage decision. Plaintiffs' conclusory Rule 403 objection will not be credited here, either. Accordingly, the Motion to Strike is **denied** as to Exhibit L.

## III. Factual Background.[8]

### A. The Application Form.

In September 2006, Hillery applied to Allstate for a policy of insurance to cover his residence, a mobile home located in Thomasville, Alabama. (Hillery Aff., at 1.) As part of the application process, Hillery met with an Allstate agent, who asked him various coverage-related questions. Hillery answered the questions orally, and the agent undertook to record that information on an application form. (*Id.* at 1.) This process culminated in an eight-page printout labeled "Allstate Indemnity Company Manufactured Home Policy Alabama," and bearing application number 000041624321531. (Doc. 56, Exh. M.) This document recited the following relevant information: (i) there were four residents in the household, including Hillery, Jones and two minor children (girls aged 7 and 15); (ii) there were no "dogs on premises"; (iii) the home was "used exclusively for residential purposes"; and (iv) in the previous five years, Hillery had never "been rejected, cancelled or nonrenewed insurance similar to the coverage applied for on this application." (*Id.*) At the bottom of page 7 of the application appeared the following

---

[8]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiffs' evidence is taken as true and all justifiable inferences are drawn in their favor.

language:

> "To the best of my knowledge the statements made by me on this application are true.  I request the Company, in reliance thereon, to issue the insurance applied for.  I declare that the Company may recompute the premium shown if the statements made herein are not substantially true."

(*Id.* at 7.)

At the top of page 8 was a signature block appearing to bear Hillery's signature, and reciting the date as September 22, 2006.  (*Id.* at 8.)  It is undisputed that Hillery in fact signed page 8 of the application form.  (*Id.*; Hillery Dep., at 30-31.)[9]  However, in the light most favorable to plaintiffs, the record shows that Hillery did not review the application form before signing it to verify that the Allstate agent had recorded his information accurately, but that he simply assumed that such was the case.  (Hillery Aff., at 1.)

The parties agree that Hillery's September 2006 application form is inaccurate in several respects.  In particular, Hillery admits that the statement on the application form that he had not been canceled for similar insurance during the last five years was false, because his insurance coverage on the mobile home from the carrier preceding Allstate had been canceled.  (Hillery Dep., at 27-28, 31.)  Hillery likewise agrees that there were more than four people living in the

---

[9]        The Court's review of the record has been hampered by the parties' submission of complete copies of deposition and recorded statement transcripts, claim history reports and other exhibits.  This tactic of dumping superfluous, unexcerpted exhibits in the court file is improper, and contravenes the Local Rules' directive that "[i]f discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response."  LR 5.5(c).  Although the parties' evidentiary submissions will be accepted as filed, this Court will not scour the uncited portions for any scrap of evidence that may advance their respective positions.  *See, e.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (federal courts "are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it"); *Preis v. Lexington Ins. Co.*, 508 F. Supp.2d 1061, 1068 (S.D. Ala. 2007) ("Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions."); *Witbeck v. Embry Riddle Aeronautical University, Inc.*, 219 F.R.D. 540, 547 (M.D. Fla. 2004) ("That judges have no duty to scour the file in search of evidence is an obvious corollary to the requirement that parties specifically identify the portions of the case file which support their assertions regarding whether genuine issues remain for trial."); *Vigor v. City of Saraland*, 2008 WL 5225821, *1 n.1 (S.D. Ala. Dec. 11, 2008) (similar).  "Instead, review of the parties' submissions is restricted to the portions of the record they have cited ...."  *Rowell v. Winn Dixie*, 2008 WL 4369003, *1 n.3 (S.D. Ala. Sept. 23, 2008) (citations omitted).

home as of September 2006, despite the application form's clear statement that there were only four residents in the household. (*Id.* at 32.) Additionally, Hillery acknowledges that he kept two canine pets (a Rottweiler and a pit bull) on the property, but the application form stated that there were no dogs on the premises. (*Id.* at 10-11, 33.) And although the application form included a statement that the mobile home was used exclusively for residential purposes, the record is clear that Jones' daughter, Shelitha Jones, was both living in the home and running a ladies' hair salon business out of that residence, pursuant to which she was working six days a week and seeing six or more customers per day. (*Id.* at 11, 13; Defendants' second Exh. P, at 10-12.)[10]

Despite these admitted inaccuracies, the summary judgment record taken in the light most favorable to plaintiffs reflects that Hillery responded truthfully to all questions asked by the Allstate agent during the application process, such that Hillery was not responsible for any errors in that document. (Hillery Aff., at 1.) For example, when the agent asked about dogs at the home, Hillery responded that he had dogs, "but they were kept on property behind [his] home and not in the house." (*Id.*) Yet the agent incorrectly filled out the application to state that there were no dogs on the premises. These facts support a reasonable inference that the observed inaccuracies in the application form were the product of transcription error by the Allstate representative, rather than false statements by Hillery. And because Hillery did not review the completed application form before he signed it, he did not catch those errors contemporaneously with the application.

**B.** **The Policy.**

Allstate issued a manufactured home policy (the "Policy") to Hillery effective September 23, 2006. (Hillery Aff., at 2.) Allstate renewed the Policy for the period running from September 23, 2007 through September 23, 2008. (Defendants' Exh. A.) The Policy provided coverage to Hillery for covered losses (including fire and theft), up to a limit of $91,007 for dwelling protection and $63,705 for personal property protection, plus up to three months of additional living expenses. (*Id.*)

---

[10]     In an apparent clerical error, defendant's summary judgment submission includes two different exhibits labeled Exhibit P. (Doc. 56, at 6, 7.) The second Exhibit P consists of excerpts from the deposition of Shelitha Jones.

Several provisions of the Policy are potentially relevant to the pending summary judgment motion.  For instance, a cancellation provision authorized Allstate to cancel the Policy if it "was obtained by misrepresentation, fraud or concealment of material facts" or if there was "material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or there has been a substantial change or increase in hazard in the risk we originally accepted." (Defendants' Exh. A, at 15-16.)  The Policy also contained a "Concealment or Fraud" section reiterating that (i) "[t]his policy is void if it was obtained by misrepresentation, fraud or concealment of material facts," and (ii) no coverage exists for "any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (*Id.* at 16.)  Yet another section of the Policy stated that, in the event of a loss, the insured must take certain actions, among them (i) provide Allstate with "a detailed list of the damaged, destroyed or stolen property," and (ii) "within 60 days after the loss, give us a signed, sworn proof of the loss" containing enumerated information, such as "the actual cash value and amount of loss for each item damaged, destroyed or stolen." (*Id.* at 29.)  Also of potential relevance is the "Other Insurance" clause which specified that if both the Policy and other insurance apply to a loss, Allstate "will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance," except that the Policy would be excess in the event of a loss by theft. (*Id.* at 33.)

###### C.     *The Loss.*

There is no dispute that the Policy remained in effect as of December 15, 2007, the date of loss in this case.[11]  On that date, Hillery, Jones and eight of their family members drove to Mobile to go Christmas shopping.  (Hillery Aff., at 2; Hillery Dep., at 46-49.)  Upon arriving in Mobile, they stopped at a Circuit City retail store to buy a television stand for Hillery's brother. (Hillery Aff., at 2; Hillery Dep., at 49.)  While Hillery was inside the store, Jones (who was waiting outside) received a telephone call informing her that the family's home was on fire. (Hillery Aff., at 2; Plaintiffs' Exh. 4, at 97-99.)  Jones ran into the store and alerted Hillery, who

---

[11]     In both their brief (doc. 58) and the Hillery Affidavit, plaintiffs recite the date of loss as December 14, 2007.  The discrepancy is not material for summary judgment purposes; however, the Court observes that numerous other documents, including both the Complaint and the police report (Defendant's Exhibit E), peg the date of loss as December 15th, not the 14th.

loaded the television stand into the vehicle and immediately drove the family back to Thomasville.  (Hillery Aff., at 2.)[12]  By the time plaintiffs reached their home, police and fire officials were already there.  (*Id.* at 2-3.)  The police report reflects that the blaze had been reported via 911 call at 6:52 p.m., that it appeared to have been arson and burglary, and that multiple items (including two televisions, a computer, and jewelry) were reported missing. (Defendants' Exh. E.)[13]

> ### D.     *The Claims Investigation.*

The day after the fire, Hillery filed claims with both AFHIC and Allstate, pursuant to his separate insurance policies with both companies.  (Hillery Aff., at 3; Hillery Dep., at 35-36, 42.) Allstate initially assigned an employee named Michael Green to the claim.  Green met with plaintiffs on December 20, 2007 to inspect the loss and initiate the claims process.  (Defendant's Exh. C, at 40; Green Dep., at 18.)  At that time, Green observed that the living room and kitchen in the mobile home would need to be rebuilt, and that the entire house had sustained heavy smoke, soot and water damage.  (Defendant's Exh. C, at 40.)  Green assisted plaintiffs in preparing a contents inventory for each room, and actually filled out those forms himself. (Green Dep., at 18; Hillery Aff., at 3.)  However, Green did not complete the property inventory loss forms for clothing, but instead provided plaintiffs with blank forms and "very limited instructions" on how to complete them.  (Green Dep., at 23; Hillery Aff., at 3.)  Each family member prepared his or her own clothing inventory form.  (Defendant's Exh. I, at 129-30.)[14] Plaintiffs did not review those forms in detail before submitting them because, in Jones' words,

---

[12]     The record includes a sales receipt from Circuit City Stores, Inc., dated December 15, 2007 at 6:58 p.m., reflecting the sale of an item described as "Adv TV Furniture" to "Tryone Hillery."  (Plaintiffs' Exh. 5.)

[13]     This was not the first time that plaintiffs had experienced a problem at their home. Indeed, plaintiffs reported that someone had broken into their home late one evening several months earlier.  (Defendant's Exh. H, at 225-27.)

[14]     Among the family members living in the home were several small children, aged four and younger.  Notwithstanding plaintiffs' contention, it defies common sense that those individuals could have completed their own inventory forms.  The salient fact, however, is that Hillery and Jones did not prepare clothing inventory forms for each and every member of their household, but instead delegated that task to others to a substantial degree.

"we was in a hurry and we was in a deadline, so we was trying to meet it." (*Id.* at 134.)[15]

On December 26, 2007, Allstate assigned primary responsibility for the investigation to Mike Rocchio in its Special Investigations Unit. (Rocchio Dep., at 27.) The reason for this assignment was that local authorities had classified the fire as incendiary, so arson was suspected. (*Id.* at 35.)[16] Plaintiffs have never disputed Allstate's contention that the fire was intentionally set; to the contrary, they have admitted as much in summary judgment briefing. (Doc. 58, at 16.) However, they unequivocally denied any involvement in the fire, any knowledge of who started the fire, or any act of arranging for someone else to start the fire. (Defendant's Exh. J, at 34, 40, 63; Defendant's Exh. H, at 224; Defendant's Exh. I, at 161.)

Pursuant to his investigation, Rocchio took recorded statements from both Hillery and Jones on January 3, 2008. (Defendant's Exh. J; Rocchio Dep., at 34.) At that time, plaintiffs detailed their activities on the day of the fire, as described *supra*. Hillery maintains that he attempted to respond truthfully to all of Rocchio's questions, but that some of his answers were inaccurate, particularly in areas of household expenses and other insurance. (Hillery Aff., at 4.) Of relevance to the summary judgment motion, Hillery told Rocchio that his mortgage payments on the home through Green Tree were current and that he was carrying no insurance on the home other than the Allstate policy. (Defendant's Exh. J, at 47, 53.)[17]

---

[15] Apparently based on these forms, Hillery ultimately submitted a sworn proof of loss to Allstate, claiming a total covered loss of $138,166.47. (Defendant's Exh. S.) Hillery's testimony is that an Allstate representative filled in the figures on the proof of loss form and supplied the answers to all questions on that form. (Hillery Aff., at 3.) Those questions included queries as to the purpose of occupancy (to which "primary residence" was written in response) and whether there had been any changes of interest, use, occupancy or possession of the property since the policy was issued (to which "no change" was written in response).

[16] Allstate's own investigation reached the same result. In that regard, a fire investigator prepared a cause and origin report for Allstate, wherein he concluded that fires "originated in the vicinity of the sofa in the living room and the stove in the kitchen," and that "ignition resulted from someone intentionally starting the fire." (Defendant's Exh. G, at 5.) According to that report, the evidence conclusively eliminated all possible fire sources other than application of an open flame heat source to the sofa. (*Id.*)

[17] Rocchio explained that information about an insured's financial status may be helpful in investigating a loss involving arson because "sometimes when people are in financial distress they do things that they might not normally do." (Rocchio Dep., at 66.)

-14-

Subsequent investigation revealed that Hillery's responses in his recorded statement as to these items were incorrect; however, the record in the light most favorable to plaintiffs shows that Hillery himself corrected many of these inaccuracies.  In particular, Hillery informed Allstate that he was delinquent on his mortgage and many other accounts (including utility and auto payments), that checks had been returned to him for insufficient funds, and that "there had been forced place insurance on the home at some time." (Hillery Aff., at 4.)  During his examination under oath before an Allstate representative on July 24, 2008 (nearly two months before the coverage decision), Hillery discussed his AFHIC insurance policy on the mobile home in considerable detail.  (Defendant's Exh. H, at 121-24.)  In addition to those subsequent clarifications, plaintiffs cooperated with Allstate by executing authorizations in defendant's favor and furnishing tax returns and other documents to Allstate upon request.  (Defendant's Exh. K; Hillery Aff., at 4.)[18]

As part of Allstate's investigation, each plaintiff submitted to an examination under oath.  At his examination in July 2008, Hillery was questioned about the personal property inventory forms that plaintiffs had submitted in connection with the fire, and particularly entries on those forms by Hillery's or Jones' children showing that they owned $17,000 in clothing purchased in the 18-month period before the fire.  Hillery responded that he "didn't get a chance to review" these forms before they were submitted, that there "probably is some mistake on here," and that he was willing to "go back through" the forms and correct them.  (Defendant's Exh. H, at 223.)

Plaintiffs submitted modified clothing inventory forms prior to Jones' examination under oath on September 4, 2008, reducing or eliminating certain line items as duplicative or erroneous.  (Defendant's Exh. I, at 130-34.)  At her examination, however, Jones identified additional mistakes on the inventory forms, such as the statement that Brandon Coston (age 3) owned 67 pairs of jeans or pants, that Braxton Coston (age 4) also owned 67 pairs of pants, and that Bralon Coston (age 1) had 40 pairs of pants.  (*Id.* at 152-53.)  Upon being confronted with these errors, Jones asked for permission "to mark the ones that I know is correct." (*Id.* at 153.)

---

[18]     Other potentially relevant information gleaned by Allstate during its investigation of Hillery's claim included the following: Hillery's auto insurance policy was canceled for non-payment on April 10, 2007 (Defendant's Exh. C, at 20), and there were 11 people living in the mobile home at the time of the fire.

In lieu of that approach, Rocchio indicated that he would send new contents forms and a new proof of loss to plaintiffs' counsel, and stressed to Jones and her counsel that the forms must be accurate because Allstate uses the information in those forms to pay the claim.  (*Id.* at 154-58.) Jones responded, "I understand.  Yes, sir."  (*Id.* at 158.)  On September 9, 2008, however, plaintiffs' then co-counsel (who is not plaintiffs' counsel of record in this litigation) notified Allstate in writing that "we will not be providing any additional amended claims/personal inventory forms," on the ground that Jones and Hillery "have gone far beyond what is reasonable to assist in resolving their claim" and Jones' answers during her examination under oath (which the letter's author did not attend) "should have provided more than enough clarity for any questions that may have arisen concerning the aforementioned forms."  (Defendant's Exh. N.)[19] The net result of the September 9 letter was that Allstate was left with contents inventory forms that Jones had admitted were inaccurate, yet plaintiffs were refusing to amend them on the ground that they had "gone far beyond what is reasonable" to cooperate with Allstate already. The letter was silent as to how plaintiffs expected Allstate to adjust and pay their contents claim given Jones' unequivocal acknowledgment just five days earlier that the contents inventory supplied by plaintiffs was inaccurate and excessive.

> ### E.    *The Denial.*

On September 18, 2008, Allstate received a 19-page coverage opinion from Angela Baker, an attorney whom it had retained for that purpose.  After reviewing the facts and pertinent principles of Alabama law, Baker opined that there was sufficient evidence that plaintiffs "had the means, opportunity and motive to participate in the act of arson which damaged the insured property and contents" to deny the claim based on the affirmative defense of arson. (Defendant's Exh. O, at 18.)  She further advised Allstate that there was sufficient evidence that plaintiffs "made misrepresentations regarding this claim, including ... the overinflation of the Contents Inventory Forms."  (*Id.*)  Based on these determinations, Baker indicated that there was a reasonable and fairly debatable question as to whether Allstate was obligated to pay any

---

[19]        The header on the letter recites the date as August 19, 2008, some two weeks <u>before</u> Jones' examination under oath.  From its terms, however, it is obvious that the letter post-dated that examination.  Fax transmission and receipt strips on the document confirm that it was actually transmitted and received on September 9, 2008, not August 19.

benefits on this claim, and recommended that Hillery's claim be denied.

On September 20, 2008, Allstate sent a letter to plaintiffs' then-counsel denying the claim on the grounds that "many misrepresentations were made during the loss" and "that this fire was intentionally set, and that your client had the motive, means, and opportunity to participate in the act of arson."  (Defendant's first Exh. P.)  This lawsuit followed.

## IV.    Summary Judgment Standard.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## V.    Analysis of Motion for Summary Judgment.

Defendant's Motion for Summary Judgment challenges the viability of the Complaint on a claim-by-claim basis.  The parties' respective arguments as to each cause of action will be considered in turn.

### A.    Breach of Contract Claim.

Plaintiffs contend that Allstate breached its contract by failing and refusing to pay insurance benefits owed to them under the Policy.  Defendant seeks summary judgment on this

cause of action on the following four grounds: (i) the Policy was voided by Hillery's misrepresentations during the application process; (ii) the Policy was voided by plaintiffs' misrepresentations in the submission of their claim; (iii) plaintiffs' insurance claim was properly denied based on the affirmative defense of arson; and (iv) plaintiffs' claim was properly denied for failure to comply with conditions precedent and failure to cooperate.

1. *Misrepresentations during Application Process.*

As an initial matter, Allstate argues that plaintiffs' breach of contract claim fails as a matter of law because the Policy was invalidated by Hillery's material misrepresentations during the application process.

Alabama law allows an insurer to deny coverage if, in the application, "the insured made misstatements that either (1) were fraudulent, (i.e., made intentionally with knowledge); or, (2) were material to the risk (although innocently made); or (3) affected the insurer's good faith decision to issue the policy for which the insured applied." *In re HealthSouth Corp.*, 308 F. Supp.2d 1253, 1270 (N.D. Ala. 2004) (citations omitted); *see also* Ala. Code § 27-14-7 (outlining the three circumstances under which misrepresentations in application may bar recovery under the policy). Here, the record leaves no doubt that Hillery's signed application form was inaccurate in several respects. What is disputed, however, is whether those inaccuracies arose because of misstatements by Hillery (as Allstate maintains) or because of transcription errors by the insurance agent who recorded Hillery's oral responses (as plaintiffs maintain). As to the latter, there is substantial record evidence, in the form of Hillery's Affidavit, supporting a reasonable inference that all of his responses to the agent were truthful, that the agent distorted those responses in transcribing them, and that Hillery was unaware of the agent's errors because he never read the completed application before signing it.

If the finder of fact were to believe Hillery's version of events, then Allstate would be unable to void the Policy on the ground of misrepresentation during the application process. Under Alabama law, "[i]t is well settled that an insurance company cannot defend its refusal to pay benefits on grounds that the insured made a misrepresentation in the application if the misrepresentation was the fault of the agent and that fault was without participation by the insured." *Miller v. Dobbs Mobile Bay, Inc.*, 661 So.2d 203, 206 (Ala. 1995); *see also National Life & Acc. Ins. Co. v. Allen*, 234 So.2d 567, 570 (Ala. 1970) ("When without any fault on the

-18-

part of the insured through neglect of the insurer's agent, misstatements are made in the application, the insurer cannot defend on this ground.") (citations omitted).  Where, as here, there are "great factual discrepancies" as to "whether [the insured] read the form [the agent] filled out, whether [the insured] knew how [the agent] had filled out the form, and whether [the agent] himself might have been responsible for the wrong information," there is plainly a jury question as to the insurer's ability to defend against the claim on the basis of misrepresentation. *Union Bankers Ins. Co. v. McMinn*, 541 So.2d 494, 497 (Ala. 1989).  Allstate is not entitled to summary judgment on this theory.[20]

> ## 2.     *Misrepresentations in Submission of Claim.*

In the alternative, Allstate seeks summary judgment on plaintiffs' breach of contract cause of action on the ground that plaintiffs made material misrepresentations in connection with the submission of their insurance claim.  Defendant apparently relies on the Policy language that authorized the insurer to cancel the Policy and void coverage in the event of "material misrepresentation, fraud or concealment of material facts in presenting a claim."  Of course, that

---

[20]     By all appearances, Allstate advanced this ground for relief on the expectation that Hillery's Affidavit would be stricken under the sham affidavit doctrine.  The Court having found no sham, defendant's misrepresentation in application argument collapses, at least for summary judgment purposes.  Further, Allstate's position in its reply brief that "[q]uite clearly, Hillery testified at deposition that he gave the information contained within the Application to the agent" (doc. 61, at 2), is unpersuasive at this stage because the quoted excerpts support contrasting inferences.  In one exchange, Hillery admitted to providing "this information" to the agent, but the context is ambiguous as to what "this information" was referencing.  Similarly, Allstate insists that "Hillery told the agent that there were six or seven people living in the house" and that he "told the agent that there were no pets on the property" (doc. 61, at 2 (emphasis omitted)), but the cited portions of his deposition do not unambiguously reflect that Hillery told anybody anything.  For Hillery to acknowledge the divergence between the true facts and the information contained in his application, as he did during his deposition, is not necessarily tantamount to an admission that he lied to the agent who completed the questionnaire.  In arguing otherwise, Allstate would have this Court construe all reasonable inferences from the record in favor of the movant, thereby turning the applicable summary judgment standard on its head.  This the Court will not do.  It is black-letter law that "[t]he jury is free to draw between reasonable interpretations of the evidence presented at trial."  *United States v. Bacon*, --- F.3d ----, 2010 WL 726348, *1 (11th Cir. Mar. 4, 2010).  The Court cannot and will not usurp that classic jury function by selecting between those interpretations on summary judgment to find in favor of the movant as a matter of law.

provision is circumscribed by Alabama statute, pursuant to which "[n]o misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation *is made with actual intent to deceive as to a matter material* to the insured's rights under the policy."  Ala. Code § 27-14-28 (emphasis added); *see also Ex parte State Farm Fire and Cas. Co.*, 523 So.2d 119, 121 (Ala. 1988) (under Alabama law, "where an insured materially misrepresents to an insurer the proof of his loss *with an intent* to deceive, the insurer need not honor, and pay pursuant to, the contract of insurance") (emphasis in original); *Howe v. Allstate Ins. Co.*, 2008 WL 559578, *1 (N.D. Ala. Feb. 13, 2008) ("the language in Alabama Code § 27-14-28 is built into every casualty insurance policy issued in Alabama" and an insurer "cannot contract around it").[21]

Plaintiffs do not deny having provided inaccurate information to Allstate during the claims investigation.  Indeed, plaintiffs acknowledge that Hillery made inaccurate statements to Allstate concerning his mortgage status (*i.e.*, indicating that the Green Tree mortgage was current when it was not) and his other insurance (*i.e.*, telling Allstate that the Policy was the only insurance on the mobile home when in fact there was an AFHIC policy on which Hillery made a claim contemporaneously with his Allstate claim).  But, plaintiffs say, there was no intent to deceive because (i) Hillery is adamant that he was trying to answer the questions truthfully at the time, and (ii) in any event, plaintiffs corrected that information during Allstate's investigation and well in advance of any coverage decision.  Allstate's only rejoinder is that "[p]laintiffs cite no authority as to why these misrepresentations are to be ignored."  (Doc. 61, at 3.)  In the Court's view, a reasonable finder of fact could conclude from the record evidence that, although they initially made inaccurate statements, plaintiffs did not intend to deceive Allstate during the claims investigation because Hillery avers that he was trying to answer Allstate's questions truthfully, and plaintiffs corrected these inaccuracies well before the insurer's investigation

---

[21]     Defendant suggests that a lower threshold than "actual intent to deceive" may be in play here because the applicable Policy language authorized Allstate to deny coverage even in the absence of such intent.  (Doc. 56, at 13-14.)  To the extent that Allstate is implying that it somehow contracted around § 27-14-28 to require a lower threshold of misrepresentation for denial of coverage, the Court rejects that contention.  The applicable legal standard is prescribed by Alabama statute, and Allstate was not free to circumvent it by imposing a more stringent misrepresentation threshold on its insured.

concluded.[22]  As such, there are genuine issues of material fact on the question of whether Hillery's misrepresentations to Allstate in his recorded statement were made with the requisite intent to deceive.  *See generally Murphy v. Droke*, 668 So.2d 513, 517 (Ala. 1995) ("Where the plaintiff presents substantial evidence that the defendant had an intent to deceive, it is for the jury to decide whether the defendant actually had such an intent."); *State Farm Mut. Auto. Ins. Co. v. Borden*, 371 So.2d 28, 30 (Ala. 1979) ("Whether specific conduct constitutes an intent to deceive is a jury question.").[23]

As for the proof of loss form, it certainly contains inaccuracies.  Here, too, there are genuine issues of material fact as to intent.  Hillery's testimony is that an Allstate representative supplied all of the information contained on that form, such that there is a jury question as to whether the inaccurate information on the proof of loss is a misrepresentation by Hillery at all, as

---

[22]      The Alabama Supreme Court's decision in *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Mills*, 123 So.2d 138 (Ala. 1960), on which Allstate relies, is distinguishable.  The *Mills* court found that an insurance policy was voided by the insured's course of conduct in which "false statements were deliberately made, reiterated, and persisted in for about three and a half months;" these false statements "were corroborated by other witnesses to the accident in accordance with the planned deception;" and the insurer "relied on such false statements in preparing a defense to any claim arising out of the accident, thus lulling it into a sense of false security, to its detriment."  *Id.* at 144.  Notably, it was "undisputed" in *Mills* "that the false statements were made deliberately as part of a planned scheme of deception."  *Id.* at 143.  By contrast, viewed in the light most favorable to plaintiffs, the record in this case shows that Hillery made no deliberate false statements, that there was no "planned scheme of deception," that Hillery corrected his misstatements with reasonable promptness, and that Allstate was not prejudiced by those misstatements and did not rely on them to its detriment.

[23]      Defendant argues that Hillery's misstatement about other insurance coverage "cannot be considered to have been made for any reason other than to allay suspicion" that plaintiffs were responsible for the fire.  (Doc. 61, at 4.)  But other reasonable inferences are possible from the summary judgment record.  Hillery avers that he was trying to answer the questions truthfully, that he made mistakes, and that he otherwise cooperated fully with Allstate and later corrected those errors.  A reasonable jury could infer from this testimony that he simply misspoke (whether from nervousness, confusion or misunderstanding) and that he did not intend to mislead Allstate or conceal material facts.  The Court must construe these inferences in the light most favorable to Hillery and Jones for summary judgment purposes.

well as whether he harbored an intent to deceive with respect to those inaccuracies.[24]

Allstate also argues that coverage is voided by inaccurate information contained in the property inventory loss forms submitted by plaintiffs. But Allstate has not identified a single inaccuracy in the forms actually prepared by Hillery and Jones; rather, Allstate's focus is on clothing inventory forms completed by other occupants of the home. The record in the light most favorable to plaintiffs shows that Hillery and Jones had nothing to do with those misstatements, did not complete those forms on behalf of their children, did not review those forms prior to their submission to Allstate, and had no reason to believe that there was any false information therein at the time of submission. Defendant does not explain how these facts yield a singular inference (sufficient to warrant entry of summary judgment in its favor) that Hillery and Jones are responsible for those misstatements and that they made them with actual intent to deceive. *See generally Allstate Ins. Co. v. Jackson*, 2007 WL 3287369, *8 (S.D. Ala. Nov. 5, 2007) ("Even the insured's inclusion of items on the proof of loss that had been moved from the property prior to the fire will not void the policy if the insured honestly believed the proof of loss was accurate.").

For all of the foregoing reasons, Allstate is not entitled to entry of summary judgment on the theory that the Policy was voided by plaintiffs' misrepresentations in the submission of their insurance claim to Allstate.

       *3.*     *Arson Defense.*

Allstate correctly points out that under Alabama law, an insurer establishes a *prima facie* case of arson for the purpose of denying coverage by proving "arson by someone, motive by the plaintiff and unexplained surrounding circumstantial evidence implicating the plaintiff." *Great*

---

[24]      For example, defendant makes much of the fact that "[p]laintiffs swore under oath at the time that the proof was signed that the amount being claimed for contents was accurate." (Doc. 56, at 17.) But plaintiffs' evidence is that an Allstate representative, and not Hillery, computed the figure for the contents claim. How was Hillery supposed to know that this figure was "severely overinflated" if he had not calculated it, or even been privy to its calculation? It is no answer for Allstate to impute knowledge to Hillery based on the erroneous contents inventory forms, where plaintiffs' evidence is that he did not prepare (or even review) those forms before turning them in to Allstate. There are simply too many competing inferences, "buts" and "what ifs," from a factual standpoint, to support entry of summary judgment for Allstate on this point.

*Southwest Fire Ins. Co. v. Stone*, 402 So.2d 899, 900 (Ala. 1981); *see also Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Lane*, 656 So.2d 371, 373 (Ala. 1995) (reciting elements of *prima facie* case of arson).  Defendant's position is that, because it can make out a *prima facie* showing of arson, it is entitled to summary judgment on plaintiffs' breach of contract claim.

This contention is a *non sequitur* that fundamentally misapprehends the import of a *prima facie* showing of arson under Alabama law.  By making such a showing, an insurer can withstand a summary judgment motion or motion for directed verdict brought by the insured as to the arson defense (*i.e.*, the insurer can present that defense to the jury).[25]  But Allstate improperly conflates a *prima facie* showing of arson with an entitlement to summary judgment on that defense.  Alabama law does not provide that an insurer's mere *prima facie* showing of arson, without more, negates an insured's breach of contract claim as a matter of law.[26]  It does not; rather, a *prima facie* showing merely raises an inference that the insured committed arson, so as to enable the insurer to present its arson defense at trial.  Simply put, "[t]he fact that Allstate has produced evidence raising an inference that the insured willfully burned the property covered by the policy simply means there is sufficient evidence for the issue to go to the jury." *Jackson*, 2007 WL 3287369, at *7.

Assuming, then, that Allstate has made a *prima facie* showing of arson, there remain

---

[25]    *See, e.g., Jackson*, 2007 WL 3287369, at *7 (by establishing *prima facie* defense of arson, insurer enables "a reasonable jury to find by a preponderance of the evidence that [the insured] intentionally caused or procured the fire," but does not entitle insurer to summary judgment "if there is a question of fact as to any of the elements"); *Lane*, 656 So.2d at 373 (effect of insurer's *prima facie* case of arson is that it constitutes "substantial evidence creating a genuine issue of material fact as to whether [the insured] engaged in arson," foreclosing summary judgment for the insured on that issue); *Stone*, 402 So.2d at 902 (where "there is at least a reasonable inference arising from the evidence that the insured willfully burned" the covered property, directed verdict against insurer on affirmative defense of arson was erroneous).

[26]    To the contrary, Alabama courts have explained that "[t]o sustain the defense of arson, the insurer, when relying on circumstantial proof, must present evidence which is so convincing that it will sustain no other reasonable hypothesis but that the plaintiff was responsible for the fire." *Mueller v. Hartford Ins. Co. of Alabama*, 475 So.2d 554, 557 (Ala. 1985).  This standard of proof is a far cry from "not particularly heavy" burden that Allstate assumes in its brief for its *prima facie* showing.  (Doc. 56, at 18.)

substantial questions of material fact as to whether plaintiffs caused the fire.  Hillery and Jones have expressly and unambiguously denied participating in, being involved in, or having any knowledge as to the origins of the fire.  They have an alibi (*i.e.*, that they were Christmas shopping in Mobile when the blaze commenced), which is independently corroborated by, among other things, the Circuit City receipt.  And they have evidence of a previous break-in to their residence within months of the fire, suggesting third-party culpability.  On this record, there remain glaring and obvious fact questions as to whether the fire was started by an arson in which plaintiffs participated; therefore, Allstate is not entitled to summary judgment on its affirmative defense of arson.

4.      *Failure to Comply with Conditions Precedent.*

Allstate's fourth ground for summary judgment on the breach of contract claim is differently situated than its brethren.  The Policy contained a section titled "What You Must Do After A Loss," which obligated the insured to "[g]ive us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed." (Defendant's Exh. A, at 29 § 3(c).)  The Policy reiterated that requirement by stating, as part of the proof of loss procedure, that plaintiffs were required to submit information concerning "the actual cash value and amount of loss for each item damaged, destroyed or stolen."  (*Id.* at 29 § 3(g)(3).)  Moreover, the Policy expressly warned plaintiffs that "[w]e have no duty to provide coverage under this section if you, an insured person, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to us."  (*Id.* at 29 § 3.) Allstate's straightforward argument is that plaintiffs failed to comply with this duty of cooperation, such that Allstate was entitled to deny coverage.

"General contract law requires a court to enforce, as it is written, an unambiguous and lawful contract."  *Drummond Co. v. Walter Industries, Inc.*, 962 So.2d 753, 780 (Ala. 2006).[27]

_____

[27]     *See also Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala. 2006) ("Insurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved.") (citations omitted); *Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1034 (Ala. 2005) ("If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy ... by making a new contract for the parties.") (citation omitted).

Courts have routinely upheld the validity of such "duties after loss" provisions obliging an insured to furnish information and documents to the insurer. *See, e.g., Nationwide Ins. Co. v. Nilsen*, 745 So.2d 264, 267 (Ala. 1998) ("An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process. ... Moreover, an insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.") (citations omitted); *Merchants Ins. Co. v. Lilgeomont, Inc.*, 84 F.2d 685, 687 (5th Cir. 1936) ("The contractual provision for discovery of books and papers and of material facts known to the insured is reasonable and valid."); *Laine v. Allstate Ins. Co.*, 355 F. Supp.2d 1303, 1305 (N.D. Fla. 2005) ("The law is settled that an insurance policy provision requiring an insured to submit to an examination under oath is lawful and binding.").

Thus, the law is clear that an insurer's obligation to pay covered claims under a policy of insurance is not triggered until the insured complies with the insurer's reasonable requests for statements and documents pursuant to a "duties after loss" provision. *See Nilsen*, 745 So.2d at 266 (where insurance policy required insured to submit to examination under oath, insured's submission to such examination was a condition precedent, such that "[o]nly after complying with that condition could he recover under the insurance contract"); *Akpan v. Farmers Ins. Exchange, Inc.*, 961 So.2d 865, 872 (Ala.Civ.App. 2007) (where insureds declined to submit to examinations under oath, insurer "could not be held to have violated a contractual obligation to pay the Akpans' claims when the Akpans had failed to comply with a condition precedent to recovery under their insurance contract"); *State Farm Fire and Cas. Co. v. Richardson*, 2008 WL 4531765, *7 (S.D. Ala. Oct. 9, 2008) (entering summary judgment for insurer where policy obligated insured to appear for examination under oath and to provide documents, and insured refused to provide a statement or relevant requested documents, effectively preventing insurer from completing investigation).[28]

---

[28]     Simply put, an insurer's "obligation to pay or to evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims." *United Ins. Co. of America v. Cope*, 630 So.2d 407, 411 (Ala. 1993). The Alabama Supreme Court has explained that "no case from this Court places on an insurance company an obligation to either investigate or pay a claim until the insured has complied with all

Viewed in the light most favorable to plaintiffs, the record reflects the following pertinent facts: Plaintiffs timely submitted clothing inventory loss forms to Allstate in connection with their contents claim.  Shortly thereafter, Hillery acknowledged during his examination under oath that there "probably is some mistake" on those forms and offered to re-submit them, after which plaintiffs made minor modifications to the forms.  Upon submitting that second iteration of inventory forms, plaintiff Jones testified in her examination under oath, "I think some of this is a mistake," and proposed to go through the line items and "just mark the ones that I know is correct."  (Defendant's Exh. I, at 152-53.)  Based on Jones' clear testimony that she believed those clothing inventory forms to be inaccurate, Allstate asked plaintiffs to submit corrected forms because of the importance of that information to Allstate's ability to pay the claim.  Neither Jones nor her attorney present at the examination under oath objected to this reasonable (and indeed necessary) request.  After all, plaintiffs had agreed that their inventory forms were not accurate, and it was obviously impossible for Allstate to adjust or pay plaintiffs' claim without correct information concerning the personal property that had been lost or damaged in the fire.

Days later, however, another attorney then representing plaintiffs notified Allstate in writing that plaintiffs "will not be providing any additional amended claims/personal inventory forms."  (Defendant's Exh. N.)  Counsel's only explanation for this abrupt about-face was his perception that Hillery and Jones had "gone far beyond what is reasonable to assist in resolving their claim" and that Jones' testimony "should have provided more than enough clarity" as to the inventory forms.  (*Id.*)  But these contentions do not make sense.  Again, Allstate cannot pay a contents claim without accurate inventory forms.  Everyone was in agreement that the forms plaintiffs had submitted were erroneous.  Without further cooperation from plaintiffs to rectify those errors, Allstate was unable to process, adjust and pay their claim.  Plaintiffs' outright refusal to cooperate placed Allstate in the untenable position of adjusting a contents claim based

---

of the terms of the contract with respect to submitting claims for payment."  *Id.* at 412; *see generally Pervis v. State Farm Fire and Cas. Co.*, 901 F.2d 944, 946 (11th Cir. 1990) (under Georgia law, "it is clear that plaintiff's refusal to submit to the requested examination under oath constitutes a breach of the insurance contract, unless some privilege excuses plaintiff's failure to comply with the contractual condition").

on inventory forms whose accuracy the insureds had disavowed.  Furthermore, Jones' testimony at her examination under oath did not provide "more than enough clarity" about the inventory forms; to the contrary, it underscored the need for line-by-line revision.  Taking the inventory forms and Jones' testimony together, the only reasonable conclusion Allstate could have reached is that it lacked sufficient information to adjust the claim without amended forms.  That is precisely the conclusion Allstate did reach, yet plaintiffs stonewalled when Allstate requested the additional information it needed.[29]

Allstate maintains that the above sequence of events entitled it to deny plaintiffs' claim for failure to comply with conditions precedent.  This contention is fully consistent with the facts (even taken in the light most favorable to plaintiffs), the Policy language and applicable provisions of Alabama law.  In response, plaintiffs remain silent.  Nowhere in plaintiffs' 21-page summary judgment brief do they address the breach-of-conditions-precedent argument.  Plaintiffs make no attempt to justify their noncompliance with Allstate's plainly appropriate and reasonable information request, nor do they seek to reconcile their refusal with their cooperation duties under the Policy.[30]  By overlooking this issue in its entirety, plaintiffs fail to rebut either the factual or legal underpinnings of Allstate's persuasive argument that summary judgment is warranted on this ground.

In sum, the Policy unambiguously imposed on plaintiffs a duty to provide a detailed list of the damaged, destroyed or stolen property for which they sought recompense by Allstate.  The

---

[29]   To be clear, the record and briefing offer no insights as to any discussions between plaintiffs and their then-attorney, or other circumstances and considerations that may have culminated in the September 9 letter from counsel refusing to comply with Allstate's request for amended contents inventory forms.  Without those facts, the Court expresses no opinion as to the propriety of the September 9 letter from the standpoint of plaintiffs' then-attorney.  Rather, the Court's sole concern today is whether plaintiffs complied with the condition precedent under the Policy.  The uncontroverted record evidence is that they did not.

[30]   Oddly enough, plaintiffs themselves rely on their willingness to correct the inventory forms as a ground for denying summary judgment, as their brief points out that "it is undisputed that Plaintiffs agreed at their examination under oath to complete new personal property inventory forms."  (Doc. 58, at 15.)  Plaintiffs conveniently overlook the fact that, despite their agreement to complete new forms, they did not do so, leaving Allstate to adjust their claim using forms that everyone agrees were materially incorrect.

only inventory forms that plaintiffs submitted to Allstate were, by plaintiffs' own admission, inaccurate. When asked to resubmit corrected forms, plaintiffs agreed, but their then-attorney later announced that plaintiffs would not do so because, in his estimation, his clients had already lent enough "clarity" to the situation. But Allstate could not possibly calculate or pay their claim with the inaccurate information provided. Under the circumstances, there are no genuine issues of material fact. Plaintiffs' unreasonable refusal to cooperate amounts to a material breach of plaintiffs' duties under the Policy, such that Allstate was not required by either the Policy terms or Alabama law to pay the claim. Accordingly, defendant is entitled to entry of summary judgment as to plaintiffs' breach of contract claim, inasmuch as Allstate did not breach the Policy by denying plaintiffs' insurance claim.

> **B.      Bad Faith Claim.**

As their second cause of action, plaintiffs seek to hold Allstate liable for "bad faith failure to pay their insurance claim," on the grounds that it "fail[ed] to undertake an investigation into the merits of their claim" and/or "breach[ed] its obligation to pay the claim." (Complaint, at 7-8.) On summary judgment, plaintiffs refine their bad faith theory by couching this claim as one for "abnormal bad faith" under Alabama law, reasoning that Allstate intentionally or recklessly failed to investigate their claim, then manufactured a debatable reason to deny it.

Even in the abnormal bad faith context, however, Alabama law is clear that contractual liability is a prerequisite to recovery. *See, e.g., State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 318 (Ala. 1999) (clarifying that in both normal and abnormal bad faith claims, "the plaintiff has always had to prove that the insurer breached the insurance contract"); *Mutual Service Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1315 (11th Cir. 2004) (under Alabama law, abnormal bad faith claim includes element that "the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim") (citation omitted); *State Farm Fire and Cas. Co. v. Agee*, 2009 WL 1441537, *11 (S.D. Ala. May 21, 2009) ("ultimately an abnormal bad faith claim can only prevail if the insured proves that he is entitled to benefits"). Simply put, "one who cannot prove she was entitled to benefits under an insurance policy cannot recover on a bad-faith claim." *Congress Life Ins. Co. v. Barstow*, 799 So.2d 931, 937 (Ala. 2001); *see also Slade*, 747 So.2d at 317 (when the Alabama Supreme Court recognized the tort of bad faith, "it intended to limit liability under that tort to those instances in which the insured's losses were

covered under the policy").

The Court has already determined that there are no genuine issues of material fact as to the breach of contract claim, and that Allstate properly denied coverage because of plaintiffs' refusal to comply with conditions precedent under the Policy.  In light of this finding, and the clear Alabama authorities holding that an insured must prove entitlement to benefits as a prerequisite for bad faith liability, this claim necessarily fails.  Accordingly, summary judgment will be entered for defendant on plaintiffs' bad faith cause of action.

### C.    *Fraudulent Misrepresentation and Suppression Claims.*

Plaintiffs' third and fourth causes of action are intertwined theories of misrepresentation and suppression.  In support of their misrepresentation claim, plaintiffs allege that Allstate represented that it would properly adjust and investigate plaintiffs' claim and that it would act in good faith, but that those representations were false.  (Complaint, ¶¶ 49-50.)  Likewise, the suppression cause of action is predicated on the awkward and convoluted notion that Allstate neglected to inform plaintiffs that it was not going to adjust the claim properly, that it would not investigate the claim, and that it would not act in good faith.  (*Id.*, ¶ 57.)  These claims are essentially complementary, and are therefore properly considered in tandem.

In its Motion for Summary Judgment, Allstate seeks dismissal of these claims on the grounds that there is no evidence of false representations, of concealment of material facts, or of intent to deceive.  Under Alabama law, the elements of a fraudulent misrepresentation claim include, *inter alia*, false representations concerning material facts.  *See, e.g., AstraZeneca LP v. State*, --- So.3d ----, 2009 WL 3335904, *10 (Ala. Oct. 16, 2009) (plaintiff bringing fraudulent misrepresentation claim must show that (i) the representation was false, (ii) it concerned material fact, (iii) plaintiff relied on the false representation, and (iv) actual injury resulted); *AmerUS Life Ins. Co. v. Smith*, 5 So.3d 1200, 1207 (Ala. 2008) (same).  Similarly, the elements of a fraudulent suppression cause of action in Alabama include concealment or nondisclosure of material facts.  *See AstraZeneca*, 2009 WL 3335904, at *10 (fraudulent suppression claim requires proof of (i) defendant's duty to disclose facts, (ii) concealment or nondisclosure of material facts, (iii) inducement of plaintiff to act, and (iv) injury to plaintiff); *Davant v. United Land Corp.*, 896 So.2d 475, 490 (Ala. 2004) ("To sustain a claim of fraudulent suppression a plaintiff must prove, among other elements, concealment or nondisclosure of material facts by the defendant.")

(citations and internal quotation marks omitted).

According to Allstate, summary judgment is warranted on both the misrepresentation and suppression causes of action because the record is devoid of evidence of false statements or concealment of material facts by Allstate at any time, and because plaintiffs' claims are "nothing more than vague generalizations that are lacking in specifics with regard to time, place, and substance." (Doc. 56, at 28.) Faced with these contentions, plaintiffs do not respond. Their summary judgment brief does not reference the misrepresentation or suppression causes of action, much less identify any genuine issues of material fact that might warrant denial of defendant's Rule 56 motion in this regard. Notwithstanding plaintiffs' omission, the Court has considered defendant's motion on its merits, as it is required to do. *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (when confronted with unopposed motion for summary judgment, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion").[31]

The summary judgment record reflects that Allstate representatives were forthright and candid with Hillery and Jones at all times during the investigation process. Although the Complaint alleges that Allstate falsely stated that "they [would] assist in adjusting the claim, would properly investigate the claim and would act in good faith" (Complaint, ¶ 49), there is no evidence that any of these statements are false. Viewing the record facts in the light most favorable to plaintiffs, Allstate conducted an extensive, protracted investigation, including numerous witness interviews and recorded statements, retention of a cause and origin investigator, consultation with coverage counsel, and the like. Moreover, upon discovering plaintiffs' many inaccurate statements of fact in their application, their recorded statements and their inventory forms, Allstate did not reflexively deny the claim, but instead provided plaintiffs with full and fair opportunities to correct their admitted misstatements. As discussed *supra*, the denial of plaintiffs' insurance claim was entirely proper, and was neither the product of nor evidence of misrepresentations by Allstate.

---

[31]     The Court adheres equally to these principles in its analysis of the breach-of-condition-precedent issue discussed in § V.A.4., *supra*, and the negligent claims-handling issue addressed in § V.D., *infra*.

On this record, no reasonable finder of fact could conclude that Allstate conveyed material misrepresentations to Hillery and Jones about the claims-adjusting process, its investigation, or its good-faith performance of these functions. Similarly, no genuine issues of material fact remain on the mirror-image suppression claim, in which plaintiffs allege that Allstate never told them it would not adjust their claim properly, would not perform a proper investigation, and would not act in good faith. Again, the factual predicate is missing, to-wit: that any of these allegedly suppressed "facts" were true. Stated differently, there is no evidence that Allstate made any false representations to plaintiffs concerning the processing and adjusting of their claim, that Allstate suppressed any material facts regarding that process, or that plaintiffs were induced to act and suffered harm in reliance on any such misrepresentations or suppressed facts.

In light of the foregoing, the Motion for Summary Judgment is due to be **granted** as to plaintiffs' fraudulent misrepresentation and suppression causes of action.

### D.    *Negligent Adjustment Claim.*

In Count Five of the Complaint, plaintiffs alleged a cause of action for negligence on the theory that Allstate had negligently breached "the duty to properly investigate and adjust their insurance claims." (Complaint, ¶ 63.) Allstate seeks summary judgment on this cause of action on the ground that Alabama courts have steadfastly refused to recognize a cause of action for negligent or wanton handling of insurance claims. This position is conclusively supported by Alabama caselaw. Indeed, the Alabama Supreme Court "has consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for alleged wanton handling of insurance claims." *Kervin v. Southern Guar. Ins. Co.*, 667 So.2d 704, 706 (Ala. 1995).[32]

---

[32]    *See also Butler v. Allstate Indem. Co.*, 2010 WL 381164, *3 (M.D. Ala. Jan. 25, 2010) (relying on *Kervin* and finding that insured "cannot state a cause of action against [insurance agent] for negligence and/or wantonness because of how he handled her insurance claim"); *Agee*, 2009 WL 1441537, at *6 ("Alabama does not recognize a cause of action for negligent and wanton claim handling"); *Alverson v. Auto-Owners Ins. Co.*, 2007 WL 437601, *2 (S.D. Ala. Feb. 6, 2007) ("It is certainly true that Alabama does not recognize a claim against an insurance company for negligent handling of an insurance claim, instead limiting the insurer's exposure to a claim for bad faith.").

On its face, Count Five of the Complaint is foreclosed by the plain language of *Kervin*, and constitutes just the sort of negligent claims-handling cause of action that Alabama courts have refused to recognize.  In summary judgment briefing, plaintiffs do not undertake to distinguish this action from *Kervin*, to assert that *Kervin* is not (or no longer should be) good law, or otherwise to set forth any principled basis why this cause of action might be viable under Alabama law.  In fact, plaintiffs fail to address this claim at all.[33]

Because this claim is plainly not cognizable under Alabama law, defendant's Motion for Summary Judgment is **granted** as to the negligent/wanton claims-handling cause of action asserted in Count Five.

**VI.  Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.      Defendant's Motion to Strike Affidavit of Tyrone Hillery (doc. 59) is **denied**;

2.      Plaintiffs' Motion to Strike (doc. 60) is **denied**; and

3.      Defendant's Motion for Summary Judgment (doc. 55) is **granted**.  All of plaintiffs' claims are **dismissed with prejudice** for the reasons set forth herein.  A separate judgment will enter.

DONE and ORDERED this 2nd day of April, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[33]      Plaintiffs' counsel has previously brought causes of action for negligent claims-handling in this District Court and has previously had such claims rejected as a matter of law for precisely the reasons set forth above.  *See Agee*, 2009 WL 1441537, at *6-7.  Furthermore, plaintiffs' counsel took the same tack in *Agee* with respect to the fraudulent misrepresentation and suppression causes of action, which counsel asserted in both this case and *Agee*, but then simply omitted any response to the defendant's motion for summary judgment on those claims. Counsel is cautioned that this pattern of bringing causes of action even after being placed on notice that Alabama courts do not recognize them (as to the negligent claims-handling claim) or discovering that there is no supporting evidence (as to the fraudulent misrepresentation and suppression claims), and then failing to articulate any good-faith basis on summary judgment for why such a cause of action might be colorable, may implicate Rule 11 concerns.  Plaintiffs' counsel is specifically reminded of his obligations under Rule 11(b)(2), Fed.R.Civ.P.